STATE OF NORTH CAROLINA v. ANTONIO McKINNEY

No. COA02-8

(Filed 15 October 2002)

### 1. Confessions and Other Incriminating Statements—confession of sixteen-year-old—coercive factors

The totality and degree of coercive factors surrounding the confession of a sixteen-year-old murder and burglary defendant were not sufficient to render the confession involuntary and inadmissible considering defendant's youth and unfamiliarity with the justice system, the officer's deceptive statements, the length of the interrogation, and defendant's access to food, drink, and restroom facilities.

### 2. Confessions and Other Incriminating Statements—custodial—no findings as to custody

The trial court did not err in a burglary and murder prosecution when considering whether a confession was coerced by not making findings resolving a discrepancy about whether defendant was in custody when he confessed. All of the evidence showed that defendant was given Miranda warnings before the interrogation took place and defendant offered no evidence other than his own affidavit to show when he was brought into custody.

Appeal by defendant from judgment entered 18 January 2001 by Judge Jerry Braswell in Wayne County Superior Court. Heard in the Court of Appeals 18 September 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas J. Pitman, for the State.*

*Mary March Exum, for Defendant.*

TYSON, Judge.

Antonio McKinney ("defendant") appeals from a judgment entered on a jury verdict of guilty on two counts of first degree murder, one count of first degree burglary, and one count of attempted armed robbery with a dangerous weapon. We find no error.

## I. Facts

On the early morning of 30 July 1999, Peggy Lofton and her infant daughter, Kelly, were shot to death in their bedroom. Peggy's older daughter, Princess, age 13, resided in the home with her mother and sister. Princess heard an intruder enter the home. Princess told Captain Jerry Best of the Wayne County Sheriff's Department that she recognized the voice of the intruder to be that of the defendant.

Around 3:45 a.m. the same morning, Princess knocked at the door of a neighbor, Deveda Yelverton. Princess asked Ms. Yelverton to call 911 because there was a man in her house with a gun. She also told Yelverton that defendant was in her home. Yelverton made an emergency call. When the sheriff deputies arrived at the Lofton home, the bodies of Peggy Lofton and Kelly Lofton were found with fatal gunshot wounds to their heads.

Spent .22 rifle cartridges were found inside the victims' home. According to Ronald Mars, SBI firearms expert, the victims were shot with a broken .22 caliber rifle that was later found in a field near the victims' home.

Captain Jerry Best testified that Princess told him that she heard someone come into the house, and that she recognized defendant's voice. Best gave this information to Sergeant David Disch and informed him that Princess had identified the defendant as the intruder. A bicycle was found at the crime scene together with tire tracks and footprints. The tracks implicated the defendant.

Based on this information, Disch went to defendant's home and found defendant seated in the back of a police car. Disch obtained consent to search the house from defendant's aunt, the owner, and obtained consent to search defendant's bedroom from defendant.

Deputy Greene took defendant to Captain Best at the Sheriff's office. Best and Greene believed defendant had been arrested and charged with multiple homicides although defendant had not yet been charged. Best and Detective Salo took defendant into an interview room and presented him with a Juvenile Rights Form and

explained his *Miranda* warnings. Disch had informed Best that defendant was ready to talk. Defendant answered each of the questions on the form, initialed the answers and signed the form waiving his rights.

Defendant was crying when he arrived at the Sheriff's Department, but appeared coherent prior to being informed of his *Miranda* rights. He denied any involvement in the murders, even after having been told that Princess Lofton had implicated him. Best told defendant that he did not believe his story. Defendant was made aware that he could take a break if needed. Best did not recall actually offering defendant food, drink, or use of the restroom. Best told the defendant that it was important to show remorse for the crimes if defendant had committed them.

After Best interviewed defendant from 8:15 a.m. to about 10:00 a.m., Disch arrived and began his interrogation. Disch wrote a statement for defendant in which defendant denied any knowledge of or complicity in the murders. Disch handed the statement to defendant who read it partly aloud. In the statement, defendant asked for a polygraph examination. The polygraph test had been suggested by Disch. Disch talked with defendant until approximately 11:45 a.m. Defendant's mother gave permission for her son to be polygraphed.

Later that afternoon, Disch and Sergeant Edwards took defendant to the SBI office in Greenville to undergo the polygraph test. Disch testified that he asked defendant before leaving if he needed to go to the restroom. Disch stopped at a gas station on the way to Greenville and asked defendant if he cared for anything to eat or drink. Defendant declined.

Upon arriving in Greenville around 3:30 p.m., Special Agent Kelly Moser spoke with the detectives about the case. Defendant waived his *Miranda* rights in a polygraph waiver. Moser administered the polygraph test to defendant after 4:30 p.m. while Disch and Edwards were not present. Defendant scored poorly on the polygraph, and Moser shared the results with him. Defendant initially denied committing the crimes, and Moser told defendant that there was good evidence against him. Defendant confessed committing the crimes to Moser. Defendant became visibly upset while confessing. After defendant verbally confessed, Moser asked Criminal Specialist Bruce Kennedy to take the defendant's statement.

Before repeating the confession at about 8:00 p.m., defendant was offered food, drink, and the opportunity to go to the restroom, and defendant declined. Defendant was again reminded of his *Miranda* rights. Defendant drew three sketches of the crime scene and signed them. Kennedy read the confession to the defendant who verified its accuracy. Defendant was returned to Wayne County and placed under arrest at 11:50 p.m.

Defendant moved to suppress his statements and confession. The trial court denied defendant's motion to suppress, after finding that defendant presented no evidence to substantiate his allegations. It found that (1) the State had offered defendant repeated opportunities to have food, drink, and use the restroom, (2) defendant made no incriminating statements prior to being given his *Miranda* warnings after being taken into custody, (3) defendant had the opportunity to talk with his mother before making any incriminating statements, and (4) defendant was given written *Miranda* warnings twice and verbally advised as well.

## II. Issues

The defendant assigns error and argues that (1) the uncontradicted evidence shows his confession was made under circumstances that rendered it to be a coerced and involuntary confession, (2) the trial court failed to resolve material disputed facts going to the admissibility of the confession, and (3) the admissibility of the confession constituted reversible error. We only consider defendant's first assignment of error as it is the only one specifically argued in his brief. N.C.R. App. P. 28(b)(5).

## III. Standard of Review

Our review of a motion to suppress is limited to whether the trial court's findings of fact are supported by competent evidence. If competent evidence exists, the findings of fact are binding on appeal. Our review is focused upon whether those findings of fact support the trial court's conclusions of law. *State v. Cabe*, 136 N.C. App. 510, 512, 524 S.E.2d 828, 830, *appeal dismissed*, 351 N.C. 475, 543 S.E.2d 496 (2000).

## IV. Circumstances Surrounding Confession

[1] Defendant contends that the circumstances surrounding his confession evidence a "coercive environment" that renders his statements involuntary. Defendant was 16 years old at the time of the con-

fession. Defendant argues that he was not able to eat, drink, or use a restroom for a 12-hour period. Defendant was interviewed by four different "gun-wearing officers" (Best, Disch, Moser, and Kennedy) in small rooms. At times, the officers told defendant that they did not believe him and that there was strong evidence of his guilt. Defendant argues that the evidence, including a bicycle found at the scene and Princess Lofton's statement that she heard defendant's voice at the time of the intrusion, was not nearly as incriminating as the officers indicated to the defendant. What was incriminating were defendant's own words.

A confession is admissible if "it was given voluntarily and under-standingly." *State v. Chapman*, 343 N.C. 495, 500, 471 S.E.2d 354, 356 (1996). The totality of the circumstances must be viewed, and "one of which may be whether the means employed were calculated to pro-cure an untrue confession." *State v. Jackson*, 308 N.C. 549, 574, 304 S.E.2d 134, 148 (1983), *cert. denied*, 490 U.S. 1110, 104 L. Ed. 2d 1027 (1989). North Carolina follows the federal test to determine volun-tariness. *Id.* at 581, 304 S.E.2d at 152. The confession should be the "product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 36 L. Ed. 2d 854, 862 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 6 L. Ed. 2d 1037, 1057-58 (1961)). If "[one's] will has been over-borne and his capacity for self-determination critically impaired, the use of his confession offends due process." *Id.* at 225-26, 36 L. Ed. 2d at 862.

Some factors considered to determine whether a confession is voluntary are: (1) the youth of the accused, (2) the accused's lack of education, (3) the length of detention, (4) the nature of the question-ing, and (5) the use of physical punishment, such as deprivation of food or sleep. *Schneckloth*, 412 U.S. at 226, 36 L. Ed. 2d at 862.

Our Supreme Court has added the following: (1) whether defend-ant was in custody, (2) whether his *Miranda* rights were honored, (3) whether he was deceived, (4) whether he was held incommunicado, (5) the length of interrogation, (6) whether there were physical threats or shows of violence, (7) the declarant's familiarity with the criminal justice system, (8) the mental condition of the declarant, and (9) whether promises were made to obtain the confession. *Jackson*, 308 N.C. at 582, 304 S.E.2d at 152-53. In analyzing the factors our Supreme Court stated that "[w]here the requirements of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), have been met and 'the defendant has not asserted the right to have counsel present during

questioning, no single circumstance may be viewed in isolation as rendering a confession the product of improperly induced hope or fear and, therefore, involuntary.' " *State v. Richardson*, 316 N.C. 594, 601, 342 S.E.2d 823, 829 (1986) (quoting *State v. Corley*, 310 N.C. 40, 48, 311 S.E.2d 540, 545 (1984)).

The defendant was given his *Miranda* warnings prior to the first interrogation by Captain Best. Defendant presented no evidence that questioning was initiated prior to defendant being placed in custody and *Mirandized*. The factors can only be viewed in reference to each other, and one cannot be relied on in isolation to the others.

Here, the factors that raise an issue that defendant's confession is suspicious include (1) the defendant's young age, (2) the deceiving statements of the officers, (3) unfamiliarity with the justice system, (4) length of interrogation, and (5) the deprivation of food, drink and use of restroom.

## A. Defendant's Youth & Unfamiliarity with the Justice System

" '[A] minor has the capacity to make a voluntary confession, even of capital offenses, without the presence or consent of counsel or other responsible adult, and the admissibility of such a confession depends not on his age alone but on a combination of that factor with such other circumstances as his intelligence, education, experience, and ability to comprehend the meaning and effect of his statement.' " *In re Mellott*, 27 N.C. App. 81, 82, 217 S.E.2d 745, 747 (1975) (quoting *State v. Dawson*, 278 N.C. 351, 180 S.E.2d 140 (1971)).

The twelve-year-old defendant in *Mellott* contended his confession was involuntary due to his young age. *Id.* This Court upheld the entry of his confession despite his youthful age because there was no evidence that he did not understand the effect of his statement. *Id.* Similarly, the fact of defendant's youth, coupled with his inexperience in the justice system, does not show a lack of understanding. Defendant acknowledged to all of the interrogating officers that he knew and understood his rights.

## B. Officers' Deceiving Statements

The interviewing officers told defendant that they did not believe him and that he should tell the truth. They also informed him that he would benefit if he showed some remorse for the crimes if he committed them. The officers exaggerated the evidence against

defendant and actually lied to the defendant about the implicating statement Princess Lofton had made against him.

Custodial admonitions to a suspect to tell the truth do not render his confession inadmissible. *State v. Jackson*, 308 N.C. at 579, 304 S.E.2d at 151. "Any inducement of hope must promise relief from the criminal charge to which the confession relates." *Id.* The officers urged defendant. to tell the truth but only if he had committed the crime. There is no evidence that the officers promised leniency or other relief from the criminal charge in exchange for defendant's confession. The admonitions of the officers do not bolster circumstances indicating coercion.

As for the false statement concerning the evidence in the case, the State contends that the misstatement of Princess Lofton's statement against the defendant was not a significant misrepresentation. Regardless of its materiality,

> [d]eceptive methods or false statements by police officers are not commendable practices, [and] standing alone they do not render a confession of guilt inadmissible. . . . False statements by officers concerning evidence, as contrasted with threats or promises, have been tolerated in confession cases generally, because such statements do not affect the reliability of the confession.

*Jackson*, 308 N.C. at 574, 304 S.E.2d at 148. In *Jackson*, the police officers not only made false statements, but showed the defendant false evidence to induce the confession. The confession was admitted. *Id.* at 574-75, 304 S.E.2d at 148. Such actions were far more threatening than the statements made at bar which merely exaggerated Princess Lofton's testimony.

### C. Length of Interrogation and Deprivation of Necessities

Defendant argues that during 12 hours of interrogation, he was deprived of food, drink and restroom privileges. Defendant likens his case to *Haley v. Ohio*, 332 U.S. 596, 92 L. Ed. 224 (1948) where a 15-year-old boy suspected of complicity with a murder was arrested at midnight and interrogated without counsel or parent present until 5:00 a.m. in relays of two or more officers. The U.S. Supreme Court determined that the confession was "wrung from a child by means which the law should not sanction." *Haley*, 332 U.S. at 601, 92 L. Ed. at 229.

There are important factual distinctions between *Haley* and the instant case. First, the accused in *Haley* was fifteen years of age while the defendant here was sixteen years old at the time of the confession. The difference appears minuscule as only one year separates the defendants, but North Carolina law affords more privileges and responsibilities to its citizens at the age of sixteen. *See* N.C.G.S. § 20-7 (issuance and renewal of drivers licenses). This Court has upheld the admissibility of a confession of an accused who was younger than sixteen. *See In re Mellott*, 27 N.C. App. 81, 82, 217 S.E.2d 745, 746-47 (1975).

The most startling difference between the cases regards the deprivation of necessities experienced in *Haley* and by the defendant at bar. The defendant in *Haley* was interrogated continuously for five hours during the middle of the night resulting in significant sleep deprivation. *Haley*, 332 U.S. at 598, 92 L. Ed. at 227. Defendant here did not drink, eat or go to the restroom during the entire time of questioning. Defendant presented no evidence that the absence of food, drink, or use of the restroom occurred because officers deprived him of these things. All testimony reveals that the officers asked defendant if he needed or wanted food, drink, or a restroom. For whatever reason, defendant *deprived himself* of those necessities. The officers cannot be held responsible for the defendant's personal choices after being provided numerous opportunities.

As for the length of the questioning, there is no indication that the defendant in *Haley* received any break from non-stop questioning by six different officers. *Haley*, 332 U.S. at 598, 92 L. Ed. at 227-28. Defendant McKinney received breaks during questioning, and was questioned by four officers. Although the questioning spanned the course of the day, it was broken into increments of less than three to four hours each.

Aggravating factors in the *Haley* case included the disputed testimony that the accused was physically beaten and the undisputed evidence showed that the defendant was kept incommunicado for over three days. *Id.* at 597-98, 92 L. Ed. at 227-28. These factors are clearly not present here where defendant was allowed to see his mother during the day of questioning.

### D. Summary

The standard for voluntariness is a "totality of the circumstances" standard. The totality and degree of coercive factors in this case are

not sufficient to render the defendant's confession involuntary and inadmissible. The trial court found sufficient facts based upon competent evidence to hold that defendant's confession was not coerced.

## V. Resolution of Disputed Facts

[2] Defendant contends that the trial court erred in failing to address inconsistencies in the record, specifically to determine the point in time when defendant was actually arrested and taken into custody. Defendant points to Disch's statement that before taking defendant to Greenville, he was not in custody, was free to leave and had not been formally charged. Disch testified that he actually arrested defendant at 11:50 p.m. after the confession was elicited. Captain Best testified that defendant was arrested for the murders before he was brought in for the first interview at 8:15 a.m.

The inconsistencies were not resolved as the trial court simply found the defendant had been "apprehended." Defendant argues that a determination of when he was in police custody is material in considering the admissibility of his confession.

We disagree. All evidence shows that defendant was given his *Miranda* warnings before a custodial interrogation ever took place. The sole situation where custody was questionable and important was brought to light in defendant's affidavit. Defendant states that while he was inside the police car before being brought in, someone made a threatening comment to induce a confession. The trial court reviewed this material and believed Officers Disch and Greene. Both were present at the time and testified that they neither heard nor said a threatening comment.

The trial court did not have to resolve all of the material conflicts presented at the *voir dire* hearing because the defendant offered no evidence other than his own affidavit in support of the motion to suppress. *State v. Smith*, 328 N.C. 99, 118-19, 400 S.E.2d 712, 723 (1991). Because defendant offered no other evidence to show when he was brought into custody, the conflict is between the officers. The trial court may take the State's evidence as uncontradicted and forego a finding of facts regarding the conflict. *Id.*

## VI. Reversible Error

Defendant argues that because the confession was the evidence linking defendant to the crimes, its admission is reversible error. If the confession had been coerced and inadmissible, it could constitute

reversible error. As we find the confession admissible, we need not reach this conclusion.

We find no error in the judgment entered on the jury's verdict convicting defendant of the crimes charged.

No error.

Judges McCULLOUGH and BRYANT concur.