DAVIS, Judge.
Jevon Rodrick Bell, Jr. ("Defendant") appeals from his conviction of breaking or entering. On appeal, he contends that the trial court (1) erred by denying his motion to suppress; and (2) lacked jurisdiction to enter judgment against him due to its failure during his trial to extend the session of court as required by N.C. Gen. Stat. § 15-167. After careful review, we conclude that Defendant received a fair trial free from error.
Factual and Procedural Background
The State presented evidence at trial tending to establish the following facts: On 4 September 2014, Michael and Diana Himes reported to a police officer that two individuals had broken into an apartment above their garage at their residence in Charlotte, North Carolina. They also stated that "a jar of change" had been taken. Diana Himes told law enforcement officers that she had seen "two black males with backpacks" running from the front door of the apartment. Officers subsequently located another witness, Heaven Whitman, who informed the officers that she had seen two individuals running from the Himes' property and that she had recognized one of them as Defendant (who had been a classmate of hers at school).
Detectives Sean Moon and J.C. Thornton with the Charlotte-Mecklenburg Police Department were assigned to the case. The information provided by Whitman led the detectives to investigate Defendant.
On 16 September 2014, Defendant was charged with felonious breaking or entering and larceny after breaking or entering. At the time, Defendant was sixteen years old and a ninth grade student at West Mecklenburg High School. The same day the charges were filed, Defendant was arrested by law enforcement officers while at his school. He was taken to the police station in handcuffs and later placed in an interview room where the arresting officers removed his handcuffs and shackled his feet to the floor.
When Detectives Moon and Thornton arrived in the interview room, Defendant was given a Juvenile Waiver of Rights form allowing him to expressly waive his Miranda rights. Detective Moon then proceeded to read each paragraph on the form aloud to him, pausing after each paragraph and asking Defendant if he understood his rights. The form also included paragraph (3), which read:
I have the right to have a parent, guardian, or custodian here with me now during questioning. "Parent" means my mother, father, stepmother or stepfather. "Guardian["] means the person responsible for taking care of me. "Custodian" means the person in charge of me where I am living (staying).
Defendant then placed his initials in the appropriate spots on the waiver form. Detectives Moon and Thornton proceeded to conduct an interrogation of Defendant during which they advised him of the crime for which he had been arrested and the fact that a witness had seen him fleeing from the Himes' home. At first, Defendant denied any involvement in the break-in. However, he subsequently admitted to the detectives that he had taken part in the break-in by acting as the "lookout."
On 6 October 2014, a grand jury indicted Defendant for felonious breaking or entering and larceny after breaking or entering. On 17 April 2015, Defendant's trial counsel moved to suppress the confession he had made to Detective Moon on the ground that it was "obtained in violation of the defendant's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution in that said statements were not a product of a free, voluntary, and informed choice."
On 30 July 2015, a hearing on the motion to suppress was held before the Honorable Lindsay Davis in Mecklenburg County Superior Court. At the hearing, Detective Moon testified for the State. Defendant and his mother, Tiffaney Bradley, testified for the defense. The trial court denied the motion to suppress, making the following oral findings and conclusions:
This matter came on for hearing on the defendant's motion to suppress a statement relating to an interview with Charlotte Mecklenburg Police Department Detectives on September 16, 2014. The defendant is present in court with counsel. The evidentiary hearing was conducted from the evidence and by at least a preponderance of the evidence the Court makes findings of fact.
The defendant was arrested at school on September 16, 2014 for felonious breaking and entering and felonious larceny. He was taken to a CMPD facility and interviewed by CMPD detectives including Detective Moon.
The defendant provided law enforcement with a telephone number for his parent before questioning about alleged criminal activity.
The defendant's parent or guardian was not notified of his arrest until after the interview by CMPD detectives.
The defendant was informed of his rights as required by GS 7B-2101 (A). The defendant stated that he understood those rights and initialed the waiver form accordingly.
At no relevant time did the defendant invoke any such right. The defendant was alert, oriented, and able to respond appropriately to the detective's inquiries. Detective Moon suggested to defendant, in words or substance, that he would like to help the defendant get on the right track, but the defendant would need to tell what happened.
The defendant admitted involvement in the criminal activity during the interview and after the suggestion by Detective Moon as previously described.
The admission preceded any reference by a law enforcement officer of the possibility of a Diversion Program that could lead to avoidance of conviction.
The defendant did not have prior experience with the criminal justice system. The defendant has a learning disability that has affected his academic progression.
The defendant did not inform Detective Moon of such disability, and Detective Moon was not aware of it. The defendant presented in the video of the interview and in testimony during this hearing as alert, able to understand questions and to respond appropriately.
Detective Moon did not promise the defendant anything in exchange for information and did not otherwise coerce the defendant into making a statement.
The defendant understood the rights of which he was informed and waived those rights freely, willingly, knowingly, and understandably.
Upon those findings, the Court concludes that GS 15A-505A[1] [sic] was violated; otherwise, the defendant's rights under statue [sic] or ... the Constitutions of North Carolina or the United States were not violated. Suppression is not required for violation of GS 15A-505 A [sic].
The motion to suppress should be and is denied.
(Footnote added.)
Dr. Claudia R. Coleman, a licensed psychologist, conducted a psychological evaluation of Defendant on 27 October 2015 and wrote a report containing her assessment of him on 16 November 2015. The report stated that Defendant had an IQ of 71-meaning that his "score falls significantly below the average at the 3rd percentile and in the Borderline range of intelligence." Dr. Coleman also determined that his reading ability was at the 7th percentile, suggesting that he was reading "at the 4.8 grade level."
A jury trial began on 1 February 2016 before the Honorable Daniel A. Kuehnert. The State presented testimony from Michael and Diana Himes, Whitman, Detective Moon, and another detective assigned to the case. The defense presented testimony from Dr. Coleman, Defendant's mother and stepfather, and Defendant. On 5 February 2016, which was a Friday, the jury began deliberations at 12:18 p.m. At 6:33 p.m., the trial court stated that the court would "be in recess ... until 9:30 Monday morning" and directed the jury to return on 8 February 2016 to resume its deliberations.
On 8 February 2016, the jury returned a verdict finding Defendant guilty of felonious breaking or entering and not guilty of larceny after breaking or entering. That same day, the trial court sentenced him to 4 to 14 months imprisonment and suspended the sentence. He was placed on unsupervised probation for 12 months. Defendant gave oral notice of appeal.
Analysis
I. Motion to Suppress
Defendant's primary argument is that the trial court erred by denying his motion to suppress. "When a motion to suppress is denied, this Court employs a two-part standard of review on appeal: The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." State v. Jackson , 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015) (citation and quotation marks omitted). "An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence." State v. Hodges , 195 N.C. App. 390, 395, 672 S.E.2d 724, 728 (2009) (citation and quotation marks omitted).
We have consistently held that "to be admissible, a defendant's confession must be the product of an essentially free and unconstrained choice by its maker." State v. Flood , 237 N.C. App. 287, 294, 765 S.E.2d 65, 70-71 (2014) (citation, quotation marks, and brackets omitted), disc. review denied , 368 N.C. 245, 768 S.E.2d 854 (2015). Thus, "[w]hen reviewing a defendant's confession, this Court must determine whether the statement was made voluntarily and understandingly." Id. at 294, 765 S.E.2d at 71.
The test for voluntariness in North Carolina is the same as the federal test. If, looking to the totality of the circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, then he has willed to confess and it may be used against him; where, however, his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.
State v. Hardy , 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994) (internal citations, quotation marks, and brackets omitted).
Generally, our appellate courts consider the following factors in determining whether a confession was given voluntarily: "whether defendant was in custody, whether he was deceived, whether his Miranda rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant." State v. Hyde , 352 N.C. 37, 45, 530 S.E.2d 281, 288 (2000) (citation omitted), cert. denied , 531 U.S. 1114, 148 L.Ed. 2d 775 (2001).
In the present case, Defendant challenges only one of the trial court's findings, and thus, the remaining unchallenged findings of fact are binding on appeal. See State v. Ramseur , 226 N.C. App. 363, 369, 739 S.E.2d 599, 604 (where Defendant did not challenge findings of fact as unsupported by competent evidence, findings were binding on appeal), appeal dismissed , 366 N.C. 599, 743 S.E.2d 219 (2013).
Defendant contests the finding that "Detective Moon did not promise the defendant anything in exchange for information and did not otherwise coerce the defendant into making a statement." Specifically, Defendant argues that Detective Moon stated during the 16 September 2014 interview that "the detective could help get him onto the right tracks, but he couldn't do that if [Defendant] is just going to sit there and deny everything."[2] (Quotation marks omitted). Defendant asserts that this statement had the effect of inducing hope or fear so as to render his subsequent confession involuntary.[3]
Defendant contends, and we agree, that this finding by the trial court is properly characterized as a mixed question of fact and law because it involves both a factual finding as to what was actually said to Defendant and a legal determination that Defendant's confession was not the result of a promise or coercion on the part of Detective Moon. See State v. Watson , --- N.C. App. ----, ----, 792 S.E.2d 171, 175 (2016) (holding that court's determination that defendant did not request the presence of his mother was "best considered a mixed question"). "As with separate findings of fact and conclusions of law, the factual elements of a mixed finding must be supported by competent evidence, and the legal elements must, in turn, be supported by the facts." Id. at ----, 792 S.E.2d at 175 (citations omitted).
While-as discussed above-we must examine the voluntariness of Defendant's confession based on the totality of the circumstances, because Defendant's primary argument is that Detective Moon improperly used hope or fear to elicit his confession, it is appropriate to initially focus on that factor.
A. Inducements Based on Hope and Fear
"Generally, a suspect's confession can be rendered involuntary when induced by an officer's statements that it would be harder for the suspect if he did not cooperate or that the suspect might obtain some material advantage by confessing." Flood , 237 N.C. App. at 297, 765 S.E.2d at 72. It is well established that "any improper inducement generating hope must promise relief from the criminal charge to which the confession relates, not to any merely collateral advantage." State v. Pruitt , 286 N.C. 442, 458, 212 S.E.2d 92, 102 (1975) (citation omitted). "However, such statements by law enforcement generally tend to render a suspect's confession involuntary only when they are preceded by other circumstances which might provoke fright in the suspect or otherwise overbear his will." Flood , 237 N.C. App. at 297, 765 S.E.2d at 72 (citation omitted) (finding defendant's confession was voluntary even though officer improperly promised to recommend lighter sentence because additional circumstances failed to show that defendant's will was overborne).
Defendant cites State v. Fuqua , 269 N.C. 223, 152 S.E.2d 68 (1967), and Pruitt in support of his contention that Detective Moon made improper inducements to him. In Fuqua , a police officer told the defendant "[t]hat if he wanted to talk to me then I would be able to testify that he talked to me and was cooperative." Id. at 228, 152 S.E.2d at 72 (quotation marks omitted). On appeal, the defendant argued that this statement was an improper inducement that rendered his subsequent confession inadmissible. Our Supreme Court agreed, holding that "[t]his statement by a person in authority was a promise which gave defendant a hope for lighter punishment. It was made by the officer before the defendant made his confession, and the officer's statement was one from which defendant could gather some hope of benefit by confessing." Id. The Court concluded that "[t]he total circumstances surrounding the defendant's confession impels the conclusion that there was aroused in him an 'emotion of hope' so as to render the confession involuntary." Id.
In Pruitt , the defendant was interrogated by three police officers in a "police-dominated atmosphere." The officers repeatedly told him that "they knew that he had committed the crime and that his story had too many holes in it; that he was 'lying' and that they did not want to 'fool around.' " Pruitt, 286 N.C. at 458, 212 S.E.2d at 102. They also made statements that they "considered defendant the type of person that such a thing would prey heavily upon and that he would be relieved to get it off his chest." Id. (quotation marks omitted). In addition, the officers told him "it would simply be harder on him if he didn't go ahead and cooperate[,]" at which point the defendant confessed. Id. (quotation marks omitted).
On appeal of the trial court's denial of his motion to suppress, the defendant argued that these statements by the officers rendered his confession involuntary. Our Supreme Court held that the officers' statements "would imply a suggestion of hope that things would be better for defendant if he would cooperate, i.e. , confess." Id. Based on this "influence of fear or hope, or both, growing out of the language and acts of those who held him in custody [,]" the Court reversed the trial court's denial of the motion to suppress. Id.
Since this decision, however, our Supreme Court has distinguished Pruitt on a number of occasions in finding that a defendant's confession was voluntary. See, e.g. , State v. McCullers , 341 N.C. 19, 24, 460 S.E.2d 163, 166 (1995) (detective stated that "it would be better for defendant if he said that he did not mean to kill the man than for him to keep denying that he did it and that the police had witnesses"); State v. Smith , 328 N.C. 99, 115, 118, 400 S.E.2d 712, 721-22 (1991) (sheriff told defendant that he "could get the electric chair[,]" that "it's in the Bible , and if he would tell the truth about it, if the D.A. or the judge would ask me did he tell the truth, I would say yeah" and "I couldn't tell him what would happened [sic], but it will be better for him when he came to court"); State v. Richardson , 316 N.C. 594, 604, 342 S.E.2d 823, 830-31 (1986) (officers informed defendant that he could be prosecuted as a habitual criminal after he initially refused to name his accomplices); State v. Thomas , 310 N.C. 369, 376, 379, 312 S.E.2d 458, 462, 464 (1984) (court determined that officer's statement "[b]e sure to tell your attorney that you had the opportunity to help yourself and didn't" was "at best ambiguous"); State v. Small , 293 N.C. 646, 653, 239 S.E.2d 429, 435 (1977) (officer told defendant he could not "buy" defendant's statement and that defendant "should tell the truth").
Here, we believe that Detective Moon's statement to Defendant that he could "help get him onto the right tracks" was too ambiguous to constitute the sort of inducement of hope or fear that existed in the cases relied upon by Defendant. Having examined that factor, we next look at the remaining factors relevant to the voluntariness inquiry to determine whether they demonstrate that Defendant's will was overborne.
B. Remaining Voluntariness Factors
In evaluating the remainder of the factors relevant to the totality of the circumstances test, we find instructive our decision in State v. McKinney , 153 N.C. App. 369, 570 S.E.2d 238 (2002). In that case, the defendant was sixteen years old, had never been involved with the criminal justice system, and was held for twelve hours of interrogation during which he refused to eat, drink, or use the restroom. Id. at 374-76, 570 S.E.2d at 242-44. The defendant argued that these factors-coupled with the interrogating officers' exaggerations about the evidence against him and their statements to him that he should tell the truth-rendered his confession involuntary. Id.
After reviewing the trial court's findings and the evidence regarding each of the voluntariness factors, this Court held that "[t]he totality and degree of coercive factors in this case are not sufficient to render the defendant's confession involuntary and inadmissible." Id. at 376-77, 570 S.E.2d at 244. Thus, we held that "[t]he trial court found sufficient facts based upon competent evidence to hold that defendant's confession was not coerced." Id. at 377, 570 S.E.2d at 244.
In the present case, on the one hand, (1) Defendant was only sixteen years old; (2) he was a student in ninth grade; (3) he had an I.Q. of 71; (4) he had never previously been involved in the criminal justice system; (5) his feet were shackled to the floor of the interview room during the entire time he was questioned by detectives; and (6) his mother was not informed that he was in police custody until after the interrogation had concluded. However, on the other hand, the evidence also showed that (1) he was only interrogated for twenty minutes; (2) he was never threatened or intimidated by the officers; (3) he was never deprived of necessities such as food, water, sleep, or the ability to use a bathroom; and (4) he was given his Miranda rights and, as the trial court found, "waived those rights freely, willingly, knowingly, and understandably"-including the right to have a parent present.[4]
Admittedly, several of the factors noted above-taken in isolation-might support a finding that Defendant's confession to Detective Moon was involuntary. However, we cannot say based on our review of the totality of the circumstances that the court erred in denying Defendant's motion to suppress. See McKinney , 153 N.C. App. at 377, 570 S.E.2d at 244 (upholding trial court's denial of motion to suppress where defendant's statement during interrogation was voluntary and not the result of coercion by detectives).
II. Extension of Court Session
In his final argument, Defendant contends that the trial court lacked jurisdiction to enter judgment against him because the court failed to properly extend its session to the following week and, therefore, violated N.C. Gen. Stat. § 15-167. "This Court ... reviews challenges to the jurisdiction of the trial court under a de novo standard." State v. Lewis , --- N.C. App. ----, ----, 779 S.E.2d 147, 149 (2015) (citation and quotation marks omitted), disc. review denied , 368 N.C. 688, 781 S.E.2d 480 (2016).
N.C. Gen. Stat. § 15-167 states as follows:
Whenever a trial for a felony is in progress on the last Friday of any session of court and it appears to the trial judge that it is unlikely that such trial can be completed before 5:00 P.M. on such Friday, the trial judge may extend the session as long as in his opinion it shall be necessary for the purposes of the case, but he may recess court on Friday or Saturday of such week to such time on the succeeding Sunday or Monday as, in his discretion, he deems wise. The trial judge, in his discretion, may exercise the same power in the trial of any other cause under the same circumstances, except civil actions begun after Thursday of the last week. The length of time such court shall remain in session each day shall be in the discretion of the trial judge. Whenever a trial judge continues a session pursuant to this section, he shall cause an order to such effect to be entered in the minutes, which order may be entered at such time as the judge directs, either before or after he has extended the session.
N.C. Gen. Stat. § 15-167 (2015) (emphasis added).
Defendant argues that because the trial court did not dictate an order in open court to extend the session of court to the following Monday, the court lacked jurisdiction to enter judgment following the jury's subsequent verdict on 8 February 2016. As Defendant concedes, however, this precise argument has been previously rejected by this Court. See, e.g. , Lewis , --- N.C. App. at ----, 779 S.E.2d at 150 (holding N.C. Gen. Stat. § 15-167 was "sufficiently complied with" and trial court had jurisdiction to enter judgment because defendant did not object to the court recessing proceedings until the following Tuesday); State v. Hunt , 198 N.C. App. 488, 495, 680 S.E.2d 720, 724-25 (ruling that trial court's failure to issue formal order memorializing extension of session of court did not violate N.C. Gen. Stat. § 15-167 ), disc. review denied , 363 N.C. 747, 689 S.E.2d 141 (2009).
Here, although it did not enter a formal order extending the session of court, the trial court orally announced on 5 February 2016 that it would "recess for the weekend" and that the jury should return to continue its deliberations the following Monday. Defendant did not object to the court's announcement. Therefore, this argument is overruled.
Conclusion
For the reasons stated above, we conclude that Defendant received a fair trial free from error.
NO ERROR.
Report per Rule 30(e).
Chief Judge McGEE and Judge MURPHY concur.

N.C. Gen. Stat. § 15A-505(a) states, in pertinent part, that "[a] law enforcement officer who charges a minor with a criminal offense shall notify the minor's parent or guardian of the charge, as soon as practicable, in person or by telephone." N.C. Gen. Stat. § 15A-505(a) (2015).

The entire interview between Defendant and Detectives Moon and Thornton was videotaped, and-as a result-we have been able to carefully review the video recording in our consideration of this appeal.

Although Detective Moon at one point also discussed the possibility of Defendant being able to participate in a "Diversion Program," this statement was made after Defendant's confession. Therefore, the reference to the Diversion Program could not have constituted an improper inducement of hope that led to Defendant's confession that he was, in fact, involved in the break-in.

Defendant does not contend on appeal that the violation of N.C. Gen. Stat. § 15A-505(a) found by the trial court by itself rendered his confession involuntary.