STATE OF NORTH CAROLINA v. WILLIAM KELLAM

No. 8017SC45

(Filed 19 August 1980)

**Searches and Seizures § 13– defendant living in parents' house – consent to search given by neighbor – evidence properly admitted**

In a prosecution for breaking and entering and larceny, the trial court did not err in allowing into evidence items seized from the home of defendant's parents since the parents resided in Hawaii but maintained the home in N. C.; a next door neighbor was given a key and was told to live in the house if she wished and to look after it; an officer, who had been told that defendant was living in his parents' house, asked the neighbor for the key which she surrendered; the neighbor had rights to control, access and possession of the home which were equal to defendant's, if not exclusive; defendant knew that the neighbor was supposed to be looking after the house and his reasonable expectation of privacy was thereby diminished; and the neighbor was reasonably apparently entitled to give or withhold consent to a search of premises within the meaning of G.S. 15A-222.

APPEAL by defendant from *Smith (David I.), Judge.* Judgments entered 8 June 1979 in Superior Court, STOKES County. Heard in the Court of Appeals 19 May 1980.

Defendant was presented with two indictments for breaking and entering, and larceny of certain items from the home of Harold Boles on 16 January 1979 and on 8 March 1979. On 6 June 1979, defendant pled not guilty and moved that the Court suppress all evidence in the search of the residence of Mr. and Mrs. Tony Anthony in Pinnacle, North Carolina, on or about 16 January 1979, by members of the Stokes County Sheriff's Department. On the same day defendant moved that the Court suppress his statement made to the Stokes County Sheriff's Department. Evidence, summarized below, was presented to the court. On 8 June 1979, the court entered an order denying defendant's motion to suppress, and defendant, with the court's

permission, withdrew his plea of not guilty and entered a plea of guilty reserving his right of appeal.

## STATE'S EVIDENCE

On 16 January 1979 a break-in was reported at the home of Harold Boles on Boles Street in Pinnacle, North Carolina.

Detective Ray Von Collins and Deputy Richard Bowman answered the call and went to the Boles home. Mr. Boles told the officers that he suspected the break-in had been committed by defendant because defendant had been seen in the area and defendant's natural parents own the home across the street from Boles' home.

Defendant is the natural son of Mr. and Mrs. Tony Anthony, but he was adopted by Charles Kellam, Sr. and his wife when defendant was small. Defendant lived with his adoptive parents in Pinnacle until the death of his adoptive father, after which defendant went to live with his natural parents in Hawaii. Mr. Tony Anthony is retired from the military service and lives in Hawaii with his wife and several children; however, the Anthonys maintain a home in Pinnacle for use during visits there. The Anthonys had given a key to their Pinnacle house to Mrs. R. J. "Fronie" Clark, who was told to look after the house and to live in the house if she wanted to live there. Mrs. Clark lived next door to the Anthony home, and she had, in fact, lived in the Anthony home during one winter.

On the evening of 16 January 1979, when the officers went to the Boyles home, they were told by Mr. Boles that Mrs. Clark had a key to the Anthony home. The two officers and Mr. Boles went to the home of Mrs. Clark and obtained a key from her to go into the Anthony home, at which time the officers found in the linen closet, basement and two bedrooms several items which had been taken from the Boles home. On 19 January 1979 Officer Collins obtained a warrant for the arrest of defendant.

On 8 March 1979 a second break-in was reported at the Boles home. Upon investigation, Officer Collins learned that defendant and David Reynolds had been seen about 200 yards

from the Boles home, at which time defendant and Reynolds were walking down the street with a duffle bag similar to one reported taken from the Boles home.

On 9 March 1979 Officer Collins arrested defendant at Pilot Mountain at about 5:30 p.m., and the defendant was driven to the jail in Danbury where they arrived about 6:15 p.m. At approximately 6:30 p.m. defendant was advised of his rights, and at 6:41 p.m. he was questioned by Officer Collins and the Sheriff. Defendant was fed at 7:30 p.m. and he did not ask for food, water or cigarettes prior to 7:30 p.m. Defendant was twice advised that he was being questioned concerning the breakings and enterings at the Boles residence. Defendant signed his name at the bottom of the form advising him of his rights and stated to Officer Collins that, because he had been in prison before, he understood his rights.

During the questioning period Officer Collins told defendant and "emphasized" that he "had searched the Anthony house and had gotten and returned a good portion of the items taken out of the house." During the course of this interview, the defendant admitted breaking into the Boles home on 8 March 1979 but denied going into the Boles home on 16 January 1979.

A second interview of the defendant by Officer Collins occurred on 13 March 1979 when the defendant asked the officer to come to his cell. The defendant was advised of his rights but refused to sign the acknowledgment of rights form. The defendant then admitted for the first time that he had been involved in both break-ins. Defendant did sign a rights form on 14 March 1979.

### DEFENDANT'S EVIDENCE

The defendant was fired from his job at Tyson Food in Dobson, N. C., and, with the permission of his mother, moved into the Anthony home in Pinnacle on 26 December 1978. Defendant lived in the home from that date until 16 January 1979. The defendant "knew Mrs. Clark was supposed to be looking after the house."

When questioned about the interrogation by Officer Collins, defendant stated that the "only reason I answered his questions was because of the evidence I saw in the room there where I was." The defendant recognized the evidence he saw at the interview as several items which he had left in the house on the 16th of January.

Other necessary facts will be stated in the opinion.

*Attorney General Edmisten by Special Deputy Attorney General John R. B. Matthis and Associate Attorney James C. Gulick for the State.*

*Jerry Rutledge for defendant appellant.*

CLARK, Judge.

Defendant presents two questions for review: (1) whether the trial court erred in denying the defendant's motion to suppress evidence seized during a warrantless search of the Anthony home on 16 January 1979; and (2) whether the trial court erred in denying the defendant's motion to suppress the statements made by the defendant to Officer Collins on three different occasions. We resolve both of these questions against the defendant.

The defendant's primary contention is that Mrs. Clark could not give any consent which would overcome the privacy rights of the defendant as occupant of the Anthony house. While we recognize that this case presents an extended application of the doctrine permitting certain third-party consents to warrantless searches without probable cause, we do not agree with defendant's position. In *United States v. Matlock*, 415 U.S. 164, 170, 94 S. Ct. 988, 39 L. Ed. 2d 242, 249 (1974), it was stated by Mr. Justice White that, "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." The *Matlock* opinion, at *id.*, fn. 4, also quoted with approval, *United States v. Sferas*, 210 F. 2d 69, 74 (7th Cir. 1954), for the proposition "that where two persons have equal rights to the use or occupation of premises, either may give consent to a

search, and the evidence thus disclosed can be used against either." *See also,* Annot., 31 A.L.R. 2d 1078 § 6 (1953).

The critical facts are provided in the testimony of Mrs. Clark:

> "Mr. & Mrs. Anthony [the owners of the searched house] gave me a key when they left to go to Hawaii last fall. They told me to look after their house. They told me that no one had permission to go into that house but me and my husband. On or about the 16th day of January, 1979, this officer [Bowman] . . . came and asked for the key to the house. He told me for what purpose. I gave him the key. He said he wanted to look in the house and see if anything was missing. I gave him the key.
>
> \*    \*    \*    \*
>
> She [Mrs. Anthony] told me and my mother that we could stay there she wanted us to stay over there. The first time we stayed over there was through the winter, the first year, and so the other time I just kept check on the house.
>
> \*    \*    \*    \*
>
> I never raised a question or mentioned to him about his staying there. I just asked him how did he get in. He told me he had a key . . . .
>
> \*    \*    \*    \*
>
> They [ the owners] did not tell me that the defendant was going to stay in the house at any time. They never told me that the defendant had permission to go into the house . . . ."

Under the authority of *Matlock* we hold that Mrs. Clark's consent is effective against defendant's Fourth Amendment claim, for the evidence suggests that Mrs. Clark had equal, if not exclusive, rights to control, access and possession of the home. While not necessarily a controlling factor, it is significant that Mrs.

Clark had been given the key to the Anthony home by the owners of the home. *See e.g.,* U.S. ex rel. *Cabey v. Mazurkiewicz,* 431 F. 2d 839, 843-44 (3d Cir. 1970) (wife inadvertently given key held not sufficient consent); *United States v. Harris,* 534 F. 2d 95 (7th Cir. 1976) (permission to use apartment but without key); *United States v. Long,* 524 F. 2d 660 (9th Cir. 1975) (wife, who was joint owner and had joint control of house but who was not living in the house occupied by husband, could consent to entry even though husband had changed locks where wife had keys to house before locks were changed). It is also significant that defendant knew that Mrs. Clark "was supposed to be looking after the house," for his reasonable expectation of privacy was thereby diminished, especially since much, but not all, of the incriminating evidence was found in "common areas" of the house, *i.e.,* the basement and linen closet. *Matlock, supra,* 415 U.S. at 171, n. 7. While it is true that Mrs. Clark did not occupy the Anthony home at the same time as the defendant, she, nevertheless, did not surrender her full possessory rights in the premises as might be true in the case of a hotel clerk who rents a hotel room to a guest, *Stoner v. California,* 376 U.S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856, *rehearing denied,* 377 U.S. 940, 84 S. Ct. 1330, 12 L. Ed. 2d 303 (1964), or one who stands in the position of a landlord relative to a tenant's leased premises, *Chapman v. United States,* 365 U.S. 610, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961). Mrs. Clark at all times maintained "joint access and control for most purposes." *Matlock, supra,* 415 U.S. at 171, n. 7.

In addition to the above case law, N.C. Gen. Stat. § 15A-221 provides that a warrantless search and seizure may be conducted if consent to the search is given. Similarly, N.C. Gen. Stat. § 15A-222 provides in pertinent part that:

"The consent needed to justify a search and seizure under G.S. 15A-221 must be given

*    *    *    *

(3) By a person who by ownership *or otherwise* is reasonably apparently entitled to give or withhold consent to a search of premises." (Emphasis supplied.)

We hold that subsection (3) of N.C. Gen. Stat. § 15A-222 is consistent with the language in *Matlock, supra,* that permission may be "obtained from a third party who possessed *common authority or other sufficient relationship to the premises* or effects sought to be inspected." 415 U.S. at 171 (emphasis added). Under the facts of this case, Mrs. Clark was "reasonably apparently entitled to give or withhold consent to a search of premises" within the meaning of N.C. Gen. Stat. § 15A-222.

We do not have to reach defendant's argument that his testimony was the "poisonous fruit" of the illegal search and should therefore be suppressed, because we have already held that the search of the Anthony home was not in violation of defendant's Fourth Amendment rights.

Affirmed.

Chief Judge Morris and Judge Erwin concur.