IN THE SUPREME COURT OF NORTH CAROLINA

No. 57PA17

Filed 21 December 2018

STATE OF NORTH CAROLINA

v.

BOBBY JOHNSON

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 795 S.E.2d 625 (2017), finding no prejudicial error after appeal from a judgment entered on 6 October 2015 by Judge Eric L. Levinson in Superior Court, Mecklenburg County. On 3 May 2017, the Supreme Court allowed defendant's conditional petition for discretionary review as to an additional issue. Heard in the Supreme Court on 8 January 2018.

*Joshua H. Stein, Attorney General, by Derrick C. Mertz, Special Deputy Attorney General, for the State-appellant/appellee.*

*Marilyn G. Ozer for defendant-appellant/appellee.*

BEASLEY, Justice.

The Court of Appeals concluded that defendant's inculpatory statements to law enforcement were given under the influence of fear or hope caused by the interrogating officers' statements and actions and were therefore involuntarily made. *State v. Johnson*, ___ N.C. App. ___, ___, 795 S.E.2d 625, 639-40 (2017). The unanimous Court of Appeals panel held that the confession should have been

suppressed but concluded the error was harmless beyond a reasonable doubt due to the overwhelming evidence of defendant's guilt. *Id.* at ___, 795 S.E.2d at 641. For the reasons stated below, we uphold the trial court's conclusion that, under the totality of the circumstances, defendant's inculpatory statements were voluntary. Therefore, we modify and affirm the decision of the Court of Appeals.

### *Background*

In the early morning hours of 2 May 2007, three men robbed a Charlotte motel where the victim, Anita Jean Rychlik, worked as manager and her husband worked as a security guard. After pistol whipping and robbing the security guard in the parking lot, two of the men entered the victim's room, where the victim was shot once in the back of her neck and killed. The men escaped, and no one was charged in the murder until October 2011. DNA evidence collected from beneath the victim's fingernails and analyzed in 2009 indicated defendant was the likely contributor.

Defendant voluntarily met with detectives on 24 October 2011 at the police station, where he was questioned in an interview room for just under five hours before being placed under arrest and warned of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). After being advised of his rights, defendant signed a written waiver of those rights and made inculpatory statements. Defendant was indicted on 7 November 2011 for first-degree murder for the killing of Rychlik.

Defendant was tried before Judge Eric L. Levinson at the 28 September 2015 criminal session of Superior Court, Mecklenburg County. On 6 October 2015, a jury

found defendant guilty of first-degree murder under the felony murder rule with armed robbery as the underlying felony. That same day, the trial court sentenced defendant to life imprisonment without parole.

Defendant made a number of pretrial motions, including a motion to suppress statements he made to law enforcement while being interrogated on 24 October 2011. Defendant argued that he was subjected to custodial interrogation before being informed of his rights as required by *Miranda*, and that his inculpatory statements were made in response to improper statements by detectives inducing a hope that his confession would benefit him. The trial court denied the motion to suppress, concluding that "[b]ased on the totality of the circumstances during the entirety of the interview, the statements made by Defendant were voluntary."

Defendant appealed his conviction to the Court of Appeals, arguing that the trial court's findings of fact "seem[ed] to intentionally downplay the influence of hope and fear" during his interrogation and were insufficient to support its conclusion that the *Miranda* warnings in this case were effective under *Missouri v. Seibert,* 542 U.S. 600, 159 L. Ed. 2d 643 (2004). The Court of Appeals panel determined that defendant was subject to custodial interrogation before being *Mirandized* and then analyzed whether the entirety of the interrogation, from the time defendant first should have been advised of his rights under *Miranda* until the time defendant made inculpatory statements, rendered those statements involuntary. *Johnson*, ___ N.C. App. at ___, 795 S.E.2d at 638-39.

The Court of Appeals concluded that the detectives used the "question first, warn later" technique held invalid in *Seibert*, but that defendant did not make inculpatory statements prior to being advised of his rights as required by *Miranda*. *Id.* at ___, 795 S.E.2d at 637-38. Because of that distinction, the Court of Appeals did not determine whether the postwarning statement should have been suppressed under *Miranda* and *Seibert*, and instead analyzed the overall voluntariness of the statements. *Id.* at ___, 795 S.E.2d at 637-38. The Court of Appeals held that the circumstances under which defendant made inculpatory statements were at least as coercive as those at issue in *State v. Pruitt*, 286 N.C. 442, 212 S.E.2d 92 (1975), and therefore, any statements given were involuntary and inadmissible. *Johnson*, ___ N.C. App. at ___, 795 S.E.2d at 638. Despite its conclusion that the statements should have been suppressed, the panel determined that admission of defendant's statements was harmless beyond a reasonable doubt due to the overwhelming additional evidence of defendant's guilt, including DNA evidence, eyewitness testimony, and accomplice testimony. *Id.* at ___, 795 S.E.2d at 640-41. This Court allowed both the State's and defendant's petitions for discretionary review on 3 May 2017.

## *Analysis*

### I. – Standard of Review

We evaluate a trial court's denial of a motion to suppress evidence to determine "whether competent evidence supports the trial court's findings of fact and whether

the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994)). If the trial court's findings of fact are supported by competent evidence, they "are conclusive on appeal, . . . even if the evidence is conflicting." *State v. Hammonds*, 370 N.C. 158, 161, 804 S.E.2d 438, 441 (2017) (quoting *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001)). Conclusions of law, however, "are fully reviewable on appeal" and "must be legally correct, reflecting a correct application of applicable legal principles to the facts found." *Id.* at 161, 804 S.E.2d at 441 (first citing *State v. Greene*, 332 N.C. 565, 577, 422 S.E.2d 730, 737 (1992); then quoting *Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826).

Determinations regarding the voluntariness of a defendant's waiver of his *Miranda* rights or the voluntariness of incriminating statements made during the course of interrogation are conclusions of law, which we review de novo. *State v. Knight*, 369 N.C. 640, 646, 799 S.E.2d 603, 608 (2017) (citation omitted); *State v. Hardy*, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994) (citation omitted).

## II. – Voluntariness and *Miranda*

At common law a confession obtained through inducements, promises, or threats of violence lacked the presumption of reliability ordinarily afforded such statements, and therefore, was not admissible at trial. *State v. Roberts*, 12 N.C. (1 Dev.) 259, 260 (1827) (per curiam) (declining to allow admission of a confession when "the defendant ha[d] been influenced by any threat or promise"); *cf. Hopt v. Utah*, 110

U.S. 574, 585, 28 L. Ed. 262, 267 (1884) (holding a confession admissible when not made as a result of inducements, threats, or promises preying on the "fears or hopes of the accused"). In short, "coerced confessions are inherently untrustworthy." *Dickerson v. United States*, 530 U.S. 428, 433, 147 L. Ed. 2d 405, 412 (2000) (citations omitted).

Compliance with *Miranda* is a threshold requirement for admissibility of such statements when made as a result of custodial interrogation and does not abrogate the need for confessions to be obtained in compliance with traditional notions of due process under both the federal and state constitutions. *Seibert*, 542 U.S. at 617 n.8, 159 L. Ed. 2d at 658 n.8 (plurality opinion) (declining to "assess the actual voluntariness of the statement" where *Miranda* warnings were inadequate); *New York v. Quarles*, 467 U.S. 649, 655 n.5, 81 L. Ed. 2d 550, 556 n.5 (1984) (noting that "failure to provide *Miranda* warnings in and of itself does not render a confession involuntary" and suggesting the defendant was "free on remand to argue that his statement was coerced under traditional due process standards"). " '[T]he mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion' as to any subsequent, warned statement." *United States v. Mashburn*, 406 F.3d 303, 307 (4th Cir. 2005) (quoting *Oregon v. Elstad*, 470 U.S. 298, 314, 84 L. Ed. 2d 222, 235 (1985)). And conversely, compliance with *Miranda* does not necessarily raise a presumption of voluntariness. Consequently, even when a defendant's *Miranda* rights are respected, and even when those rights are

voluntarily, knowingly, and intelligently waived, the confession itself must also be voluntary under traditional notions of due process. "If, looking to the totality of the circumstances, the confession is 'the product of an essentially free and unconstrained choice by its maker,' then 'he has willed to confess [and] it may be used against him;' where, however 'his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.' " *Hardy*, 339 N.C. at 222, 451 S.E.2d at 608 (alteration in original) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 36 L. Ed. 2d 854, 862 (1973)).

Whether the defendant's rights under *Miranda* and its progeny have been respected is a factor to be considered when assessing the overall voluntariness of a defendant's confession. *See, e.g., id.* at 222, 451 S.E.2d at 608 (listing compliance with *Miranda* as a factor to be considered in the voluntariness inquiry). Consequently, assessing the admissibility of a statement given in response to police questioning requires an assessment of both compliance with *Miranda* and the overall voluntariness of the statement. We agree with the State that the Court of Appeals erred by compressing these steps to analyze voluntariness alone. *Johnson*, ___ N.C. App. at ___, 795 S.E.2d at 634. Compliance with *Miranda* is a factor to be considered when evaluating voluntariness in light of the totality of the circumstances under which the statement was given. Whether the State has complied with *Miranda* necessarily involves a determination whether the person being interviewed was subjected to custodial interrogation, which is itself a totality of the circumstances

analysis. While these two analyses will require the Court to examine interrelated and overlapping facts, one is not a replacement for the other. Likewise, determining whether a defendant has voluntarily waived his rights under *Miranda* does not abrogate the need to evaluate the voluntariness of the statement itself.

### III. – Compliance with *Miranda* in light of *Seibert*

"*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' " *Oregon v. Mathiason*, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719 (1977) (per curiam). There is no question that defendant was read the *Miranda* warnings when he was formally placed under arrest and that he signed a form acknowledging his waiver of those rights. The parties disagree, however, as to whether those warnings, when given, were sufficient to comply with *Miranda* in light of the United States Supreme Court's decision in *Seibert*, 542 U.S. at 600, 159 L. Ed. 2d at 643. Defendant relies on *Seibert* to argue that the officers' use of the "question first, warn later" method of interrogation violated *Miranda*. The State argues that there is no evidence that officers intentionally used the "question first, warn later" technique at issue in *Seibert*, and therefore, this case is distinguishable and should be analyzed instead under the rationale of *Oregon v. Elstad*, 470 U.S. 298, 84 L. Ed. 2d 222 (1985). We do not find the reasoning of *Elstad* distinguishable from *Seibert* in this way. Rather, the two cases stand for the same proposition: *Miranda* warnings must be given in a manner that meaningfully apprises the interviewee of his choice to give an admissible

statement or stop talking before he is taken into custody and questioned.

In *Seibert*, the officer testified that he purposefully did not place the defendant under arrest until after he had questioned her for some time and she had fully confessed. *Seibert*, 542 U.S. at 604-07, 159 L. Ed. 2d at 650-51. By doing so, he was able to secure a confession without apprising the defendant of her constitutional rights as required by *Miranda*. *Id.* at 604-07, 159 L. Ed. 2d at 651. He then gave the obligatory warnings, confronted her with her prewarning statements, and repeated the questions to confirm what had already been said. *Id.* at 605, 159 L. Ed. 2d at 650-51. According to the Court, the manifest purpose of this interrogation technique was to obtain "a confession the suspect would not make if he understood his rights at the outset," thereby intentionally circumventing *Miranda* and undermining the purposes it sought to serve—combatting interrogation tactics designed to trick, pressure, or coerce a suspect into incriminating himself without knowing or understanding he had the right not to do so. *Id.* at 613, 159 L. Ed. 2d at 655. The Court explained that the practice of administering *Miranda* warnings in the midst of coordinated and continuing interrogation undermines the defendant's ability to knowingly and intelligently waive the right to remain silent by placing him in a state of confusion as to why his rights are being discussed *after* he has been interrogated. *Id.* at 613-14, 159 L. Ed. 2d at 656. Doing so is "likely to mislead and 'depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.' " *Id.* at 613-14, 159 L. Ed. 2d at 656 (alteration in

original) (quoting *Moran v. Burbine*, 475 U.S. 412, 424, 89 L. Ed. 410, 422 (1986)).

The prewarning statement at issue in *Elstad*, on the other hand, was not made in a station house interrogation but rather in the defendant's home where officers had come to execute an arrest warrant. *Id.* at 300-01, 84 L. Ed. 2d at 226-27. The officers allowed the defendant to get dressed before placing him under arrest and taking him to the sheriff's department for interrogation, where the defendant was read the *Miranda* warnings before being questioned. *Id.* at 300-01, 84 L. Ed. 2d at 226-27. The defendant's initial statements were made in casual conversation with an officer in the defendant's own home, while his subsequent statements were made after being transported to the police station in a patrol car and placed in an interrogation room for questioning. The Court concluded that, under such circumstances, "a subsequent administration of *Miranda* warnings . . . should suffice to remove the conditions that precluded admission of the earlier statement," *id.* at 314, 84 L. Ed. 2d at 235; those "conditions" being his lack of information essential to understanding the nature of his rights and the consequences of abandoning them. Consequently, under both *Elstad* and *Seibert*, the question for a reviewing court remains whether, under the totality of the circumstances, the warnings so given could function effectively to apprise the suspect that he had a real choice to either give an admissible statement or stop talking.

The Court of Appeals here "agree[d] that the detectives in the present case used the same objectionable technique considered in *Seibert*," but held that because

defendant "did not confess until after he was given his *Miranda* warnings," the court needed only to determine whether his statements were involuntary. *Johnson*, ___ N.C. App. at ___, 795 S.E.2d at 637-38. This was error. When a defendant asserts that his or her *Miranda* rights have been violated as a result of successive rounds of custodial interrogation, some portion of which was unwarned, the question for the court is whether the warnings effectively apprised him of his rights and whether he made a voluntary, knowing, and intelligent waiver of his right to remain silent. Whether a defendant made prewarning inculpatory statements may be a factor that affects that analysis, but it does not change the nature of the question to be asked.

While defendant has argued vigorously on appeal that his *Miranda* rights were violated by the officers' use of the "question first" technique, he did not make that argument to the trial court. He did not assert to the trial court that his postwarning statements suffered from the same constitutional infirmity as any prewarning statements, because there were no such inadmissible prewarning statements upon which he could base such an argument. Rather, he argued that the totality of his interaction with officers was involuntary because of the substance of his unwarned conversations with officers that morning. Although his motion to suppress includes an assertion that the officers "initially . . . did not ascertain that he knowingly and voluntarily waived his rights to remain silent," he did not argue that the waiver of his rights under *Miranda* in the afternoon was not voluntary, knowing, and intelligent, nor that he did not understand his right to remain silent at the time he

was *Mirandized*; only that officers should have obtained the waiver earlier in the day.[1]  In fact, he conceded to the trial court that "the technical requirements of *Miranda* may have been met," but contended that his statement should have been suppressed nonetheless because it was involuntary.

The trial court found as fact that the waiver forms introduced into evidence by the State "accurately reflect[ed] the required *Miranda* warnings."  This determination is supported by competent evidence in the record and has not been challenged by defendant.  Consequently, it is binding on appeal.  Having made an appropriate waiver of his rights under *Miranda*, the finding supports the trial court's conclusion that "[t]he requirements of *Miranda* were satisfied."  We therefore proceed to defendant's claim that his statements were involuntary.

## IV. - Voluntariness

Although defendant does not argue that his postwarning statements failed to comply with *Miranda*, he does argue that they were involuntarily procured as a result of the statements made by officers during the first "round" of interrogation before he was *Mirandized*.  Defendant contends that the officers' statements  improperly

---

[1] Because defendant did not seek to suppress any statements made to officers during the first several hours of his interrogation, before he was formally arrested and *Mirandized*, and in light of defendant's concession that "the technical requirements of *Miranda* may have been met," we do not find it necessary to determine whether he was "in custody" for purposes of *Miranda* before he was formally arrested.  This position, taken at the hearing on the motion to suppress, appears to conflict with the motion itself which stated that "[u]se of Defendant's statement would be in violation of Fifth, Sixth and Fourteenth Amendment rights . . . under case law of the United States Supreme Court, *Miranda v. Arizona*, and its progeny."

induced hope that his confession would benefit him. His motion to suppress cites *State v. Pruitt* for the proposition that "a confession obtained by the slightest emotions of hope or fear ought to be rejected." 286 N.C. at 455, 212 S.E.2d at 101. The State argues that both defendant's and the Court of Appeals' reliance on *Pruitt* is misplaced because, in the State's view, the "*per se*" voluntariness analysis in that case and its predecessors has been circumscribed by our more recent decisions that favor a totality of the circumstances analysis of the voluntariness of a confession. The Court of Appeals quoted *Pruitt* extensively and ultimately determined that "the circumstances in the present case were at least as coercive as those in *Pruitt*" and therefore held "that Defendant's inculpatory statements 'were made under the influence of fear or hope, or both, growing out of the language and acts of those who held him in custody.'" *Johnson*, ___ N.C. App. at ___, 795 S.E.2d at 639-40 (quoting *Pruitt*, 286 N.C. at 458, 212 S.E.2d at 103). We hold that the trial court's conclusion that defendant's inculpatory statements were voluntarily made was adequately supported by its findings of fact and that those findings are supported by competent evidence in the record. We therefore modify and affirm the decision of the Court of Appeals.

We assess the voluntariness of a confession by determining whether, under the "totality of the circumstances, the confession is 'the product of an essentially free and unconstrained choice by its maker,'" in which case it is admissible against him, or conversely, whether "'his will has been overborne and his capacity for self-determination critically impaired,'" in which case "'the use of his confession offends

due process.'" *Hardy*, 339 N.C. at 222, 451 S.E.2d at 608 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 36 L. Ed. 2d 854, 862 (1973)). In addition to considering whether the defendant's rights under *Miranda* have been heeded, when conducting this review of the totality of the circumstances, the Court should also consider: (1) circumstances under which the interrogation was conducted, for example the location, the presence or absence of restraints, and the suspect's opportunity to communicate with family or an attorney; (2) treatment of the suspect, for example the duration of the session or consecutive sessions, availability of food and drink, opportunity to take breaks or use restroom facilities, and the use of actual physical violence or psychologically strenuous interrogation tactics; (3) appearance and demeanor of the officers, for example whether they were uniformed, whether weapons were displayed, and whether they used raised voices or made shows of violence; (4) statements made by the officers, including threats or promises or attempts to coerce a confession through trickery or deception; and (5) characteristics of the defendant himself, including his age, mental condition, familiarity with the criminal justice system, and demeanor during questioning.[2] None of these factors

---

[2] *See, e.g., State v. Kemmerlin*, 356 N.C. 446, 458, 573 S.E.2d 870, 881 (2002) (citing, *inter alia, State v. Hyde*, 352 N.C. 37, 45, 530 S.E.2d 281, 288 (2000), *cert. denied*, 531 U.S. 1114, 148 L. Ed. 2d 775 (2001)) (listing factors, including "whether defendant was in custody, whether her *Miranda* rights were violated, whether she was held incommunicado, whether there were threats of violence, whether promises were made to obtain the confession, the age and mental condition of defendant, and whether defendant had been deprived of food," as well as the "defendant's familiarity with the criminal justice system, length of interrogation, and amount of time without sleep"); *Hardy*, 339 N.C. at 221-22, 451 S.E.2d at 607-08 (listing same factors and additionally considering the environment and duration of the interview;

standing alone will necessarily be dispositive, *State v. Kemmerlin*, 356 N.C. 446, 458,

573 S.E.2d 870, 881 (2002) (citing *State v. Barlow*, 330 N.C. 133, 141, 409 S.E.2d 906,

911 (1991)), and the court is certainly free to look to a host of other facts and

circumstances surrounding the act of confessing to determine whether, under the

totality of the circumstances, the defendant was truly capable of making, and did in

fact make, a free and rational decision to confess his guilt.

In this case the trial court's findings of fact indicate that defendant came to the

police department headquarters on his own without police escort, was not shackled

or handcuffed,[3] and retained possession of his personal cell phone while inside the

interview room. Defendant was placed in an interview room with two plainclothes

police officers on the second floor of a secure law enforcement facility. At one point,

his cell phone rang and it appears from the record that officers would have allowed

him to answer had he chosen to do so. Officers made no threats of physical violence

but did interrogate defendant rigorously and raised their voices. Defendant was told,

demeanor and characteristics of the interviewee; officers' civilian dress, lack of weapons, and demeanor; and subjective belief of the defendant, including whether he asked to leave, requested an attorney, felt he was free to leave, and believed what officers were telling him); *State v. Jackson*, 308 N.C. 549, 573-74, 304 S.E.2d 134, 147-48 (1983) (finding the defendant's statement voluntary even though officers fabricated evidence because the defendant: was not in custody; was *Mirandized*; was not threatened, touched, or intimidated; was driven by officers to his chosen destination at the conclusion of the first interview; and had extensive experience with interrogation), *overruled on other grounds as stated in State v. Abbott*, 320 N.C. 475, 481, 358 S.E.2d 365, 369 (1987).

[3] The Court of Appeals recited as fact that defendant was made to shackle himself to the floor of the interrogation room after he was placed under arrest, four and one-half hours after questioning began. Defendant has not challenged the trial court's finding that he was not shackled or handcuffed and that finding is therefore binding on appeal.

contradictorily and repeatedly, that officers both could not promise him anything and that the district attorney would "work with him" and would "go easier on him" if he cooperated and gave them truthful information. After a lengthy interrogation, officers asked whether defendant believed he would be able to go home that day and defendant responded, "No." The following conversation ensued:

> Officer 1:   Then you're under arrest for murder.
>
> Officer 2:   If you don't believe you can get up and walk out of here, then I have no choice. You just told me you believe you're going to jail.
>
> Officer 1:   Did you just say that, yes or no?
>
> Defendant:  Yes, sir.
>
> Officer 1:   Then I'm going to have to place you under arrest and then I've got some stuff to do before I continue. Because to be voluntary, you've got to believe you can walk out of here.
>
> . . . .
>
> Officer 1:   If you feel like you can leave, then we're good. But if not, then we'll have to do something different. Do you think you can get up and walk out of here any time?
>
> Defendant:  Not at any time, only after you free me to go.
>
> Officer 2:   That's different, Bobby. Do you think you can walk out of here right now?
>
> Defendant:  Yes.

The unwarned portion of the interrogation lasted about five hours. When defendant was formally arrested, officers *Mirandized* him and secured a written waiver of his rights. Questioning continued for another four hours. During the

unwarned portion of the interrogation defendant was given coffee and cigarettes and was offered food. He had access to the restroom if needed and was offered a wastebasket when he began to feel ill. Defendant was, at times, left alone in the interview room. There was no guard or police officer stationed at the door. Defendant was in his mid-thirties, had obtained his GED, and was articulate, intelligent, literate, and knowledgeable about the criminal justice system and its processes. As the trial court found, defendant at times appeared eager to assist the officers in their investigation and offered to help, offered to wear a wire, and offered to do whatever else he could to help with the investigation.

The trial court concluded as a matter of law that, "[b]ased on the totality of the circumstances during the entirety of the interview, the statements made by Defendant were voluntary," and that "[t]he confession was not obtained as a result of hope or fear instilled by the detectives." Defendant argues that the trial court's findings of fact failed to disclose material circumstances regarding the giving of his confession and therefore do not support the trial court's conclusion of law. Defendant has challenged five of the trial court's findings of fact:

> 5 The Defendant was not told he was under arrest[.]
> 19[ ] The Defendant was emotional at times[.]
> 20 The Defendant cried at times[.]
> 21 The defendant expressed concern with his ability to "keep food down[.]"
> 26[ ] While there were no specific promises or threats made by law enforcement, the detectives conducting the interview did represent to the Defendant that the District Attorney "might look favorably" at the

Defendant if he made a confession[.]

Defendant asserts that finding of fact 5 is "at best an incomplete finding," as he was told he would be arrested if he did not state that he was there voluntarily. While we agree that a more detailed finding may have preserved for the record a more nuanced understanding of the exchanges that took place between defendant and the interviewing officers, there is competent evidence in the record to support the finding as written. Consequently, the finding is conclusive on appeal.

Defendant similarly asserts that findings of fact 19, 20 and 21 "downplay" the actual circumstances of the encounter. Again, while it may be true that a more detailed set of findings would have more thoroughly described defendant's physical and emotional state, the findings as written are not erroneous. Instead, these findings are supported by the evidence in the record and it is not the duty of this Court to reweigh the evidence presented to the trial court. Consequently, we are also bound by these findings.

Finally, defendant challenges finding of fact 26 as inaccurate. Defendant argues that detectives threatened him when they told him that they had sufficient evidence to convict him of capital murder and that he would "wear" the whole charge himself unless he provided them the names of his accomplices. However, we have held that informing a defendant of the charge he is facing does not constitute a threat. *See State v. Richardson*, 316 N.C. 594, 602, 342 S.E.2d 823, 829-30 (1986). We find sufficient evidence in the record to support finding of fact 26 as written, and we are

consequently bound by it for purposes of appellate review.

In addition to challenging several of the trial court's findings of fact, defendant also argues that his statements were involuntary as a result of statements made by officers before he was *Mirandized* that "improperly induced hope that his confession would benefit him." Defendant's arguments incorporate the division of the interrogation into "rounds" as in the United State Supreme Court's analysis in *Seibert*, 542 U.S. at 615, 159 L. Ed. 2d at 658, and defendant asks that this Court evaluate the voluntariness of the statement he gave after receiving the *Miranda* warnings in the second "round" of questioning through the lens of the statements by officers in the first "round." To do as defendant asks is unnecessary given the trial court's totality of the circumstances analysis which requires that the entire encounter be evaluated to determine whether defendant freely and voluntarily chose to make a confession. The question is not simply whether the officers made a promise or made a threat, no matter when such statements were made during the encounter, but whether any such statements made by the officers resulted in defendant's will being overborne such that his capacity for self-determination was so impaired that the giving of his confession cannot be thought to be voluntary.

Defendant did not argue to the trial court that officers made specific promises to him or threatened him. He simply argued that their statements "improperly induced hope that his confession would benefit him." We note that the presiding judge watched the entirety of the interrogation interview and concluded that

defendant's statements were voluntarily made. The trial court had the benefit of observing the testifying witnesses and heard extensive arguments from counsel. The trial court's findings of fact are supported by sufficient competent evidence and support the conclusion that, under the totality of the circumstances, defendant was not coerced or induced through hope or fear into giving his confession and that his confession was in fact voluntarily given.

## V. – Conclusion

We hold that the Court of Appeals erred in condensing the *Miranda* and voluntariness inquiries into one. We also hold that defendant did not preserve the argument that officers employed the "question first, warn later" technique to obtain his confession in violation of *Miranda* and *Seibert*. The trial court's conclusion that the requirements of *Miranda* were met is adequately supported by its findings of fact, as is its conclusion that defendant's statements to officers were voluntarily made. We therefore modify and affirm the decision of the Court of Appeals.

MODIFIED AND AFFIRMED.

Justice HUDSON concurring in result.

I concur in the result reached by the majority. Here the Court of Appeals determined that although defendant's constitutional rights were violated by the trial court's failure to suppress his inculpatory statements, this error was harmless beyond a reasonable doubt due to the overwhelming evidence of defendant's guilt. *State v. Johnson*, ___ N.C. App. ___, ___, 795 S.E.2d 625, 640-41 (2017); *see also State v. Autry*, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988) ("Significantly, this Court has held that the presence of overwhelming evidence of guilt may render error of constitutional dimension harmless beyond a reasonable doubt." (citing *State v. Brown*, 306 N.C. 151, 164, 293 S.E.2d 569, 578, *cert. denied*, 459 U.S. 1080, 103 S. Ct. 503, 74 L. Ed. 2d 642 (1982))). Specifically, the Court of Appeals stated:

> [W]e hold that the overwhelming evidence of Defendant's guilt of first-degree murder, based upon the evidence that Anita was murdered in the course of a robbery in which Defendant played an essential part, renders this error harmless beyond a reasonable doubt.
>
> Both Josh and Tony, whose testimony Defendant did not move to suppress, identified Defendant as the third man involved in the robbery and shooting, and both stated Defendant was wearing a mask that covered his face. They both testified that Defendant and Tony entered the motel while Josh remained outside, and both claimed Defendant was carrying a gun. Brandy testified that there were two younger men without their faces covered, and an older, larger man whose face was covered by a mask. Brandy testified it was the older, larger man who held the gun, and who entered the motel with one of the younger men. Most importantly, Defendant's DNA was recovered from under Anita's fingernails. Although Defendant's admission of participation in the crime, which we have held was

involuntary, clearly prejudiced Defendant, in light of the overwhelming evidence presented pointing to Defendant as one of the three men involved in the robbery and murder, we hold the prejudice to Defendant was harmless beyond a reasonable doubt. We reach this holding on these particular facts, and because the jury was instructed on acting in concert and felony murder based upon killing in the course of a robbery. The State did not have to prove that Defendant shot Anita, only that he was one of the three men involved in the robberies and murder. The evidence that Defendant was one of the three men involved was overwhelming, and the State has shown beyond a reasonable doubt that Defendant would have been convicted even had his motion to suppress his inculpatory statements been granted.

*Johnson*, ___ N.C. App. at ___, 795 S.E.2d at 640-41 (footnote omitted). In my opinion, the Court of Appeals properly concluded that there was overwhelming evidence of defendant's guilt of felony murder, particularly in light of the evidence of defendant's DNA recovered from under the victim's fingernails.

Accordingly, this Court's analysis and determination regarding defendant's constitutional rights is unnecessary, in my view. *See James v. Bartlett*, 359 N.C. 260, 266, 607 S.E.2d 638, 642 (2005) ("However, appellate courts must 'avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds.'" (quoting *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (per curiam))); *see, e.g., State v. Powell*, 340 N.C. 674, 686, 459 S.E.2d 219, 224 (1995) ("Assuming *arguendo* that the trial court erred by admitting the statements defendant made after [the police officer] destroyed the [*Miranda*] waiver form, we hold that the error is harmless beyond a reasonable doubt." (citing N.C.G.S.

§ 15A-1443(b) (1988))), *cert. denied*, 516 U.S. 1060, 116 S. Ct. 739, 133 L. Ed. 2d 688 (1996). Because I conclude that any error by the trial court was harmless beyond a reasonable doubt, I would affirm the Court of Appeals on that basis alone. Therefore, I respectfully concur in the result.