IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-743

Filed 2 July 2024

New Hanover County, Nos. 18CRS54214 18CRS5870-75

STATE OF NORTH CAROLINA

v.

ALFREDO TRANSISTO DURAN-RIVAS

Appeal by defendant from judgment entered 27 October 2022 by Judge Phyllis M. Gorham in New Hanover County Superior Court. Heard in the Court of Appeals 11 June 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sherri Horner Lawrence, for the State.*

*Heaney Law Office, by Christopher J. Heaney, for the defendant-appellant.*

TYSON, Judge.

Alfredo Transisto Duran-Rivas ("Defendant") was found guilty by a jury of three counts of statutory rape of a child by an adult, one count of statutory sexual offense with a child by an adult, four counts of taking an indecent liberty with a child, five counts of first-degree sexual exploitation of a minor, and five counts of third-degree sexual exploitation of a minor. Judgment was entered thereon. Our review discerns no prejudicial or reversible error.

## I. Background

New Hanover County Sheriff's Deputy Grant Gregory pulled Defendant's vehicle over for exceeding the speed limit on 29 May 2018. Deputy Gregory also recognized Defendant's vehicle matched the description of the "be on the lookout" ("BOLO") warning issued in response to allegations of child sexual abuse. Deputy Gregory concluded the initial stop with a verbal warning to Defendant. Deputy Gregory contacted the Sheriff's office, prompting Jeff Cromer, a detective in general investigations, to arrive on the scene.

Detective Cromer attempted to speak with Defendant. Learning Defendant's native language was Spanish, he used an English-to-Spanish translator program on his cellular phone to communicate with him. Detective Cromer identified himself as a New Hanover County Sheriff's Deputy and stated he wanted to speak with Defendant regarding "pornographic images" Defendant's wife had reported finding on Defendant's old cellular phone, which was silver. Defendant had given the cellular phone to their two-year-old so he could watch videos on the device.

Using the English-to-Spanish translator, Detective Cromer asked Defendant to participate in a voluntary interview. Detective Cromer did not state Defendant's participation was mandatory, nor did he state Defendant was not free to leave. Defendant drove himself to the New Hanover County Sheriff's Office and was taken into a separate room for questioning. Defendant was not restrained and used his cellular phone prior to being questioned.

Sheriff's Detective Justin Blevins initially questioned Defendant, but upon

realizing Defendant primarily spoke Spanish, he brought in Sheriff's Detective Jose Lugo to lead the interview. Detective Lugo understands and speaks some Spanish. Defendant informed the detectives he understood some English. Detective Lugo confirmed Defendant had driven himself to the Sheriff's office and had not been handcuffed. Detective Lugo told Defendant his presence at the Sheriff's office was voluntary and confirmed Defendant understood what "voluntary" meant. Defendant responded he understood the word "voluntary" to mean if he wanted to leave, he could leave. Later in the interview, Detective Lugo again confirmed Defendant understood the meaning of "voluntary" by using the English-to-Spanish translator application.

During the course of the interview, Defendant was: (1) offered food and water; (2) left alone in the unlocked room with his cellular phone; and, (3) interviewed by officers in plain clothes. At one point, Sheriff's Lieutenant Swan entered the questioning room and remained for approximately fifteen minutes. Lieutenant Swan raised his voice and told Defendant to apologize to the victim and admit what he had done, so that the victim would be able to begin the healing process. Lieutenant Swan purportedly did not promise Defendant anything in return for his confession.

Later in the interview, Detective Lugo asked Defendant to see his current cellular phone, which was black. Defendant agreed, but he maintained his grip on the cellular phone as Detective Lugo scrolled through his photographs and videos. Detective Lugo also asked Defendant if he could download its contents. Defendant denied this request. Detective Lugo continued to scroll through Defendant's cellular

phone, and at a certain point, Defendant hastily pulled it away. Detective Lugo warned Defendant not to delete any photos and placed the black cellular phone out of Defendant's reach.

Defendant told Detective Lugo he had touched the purported six-year-old victim. Hearing this, Detective Lugo left the room and returned with two *Miranda* forms, one in English and the other in Spanish. Detective Lugo asked Defendant to read the Spanish version and to sign it. Detective Lugo again left the room and returned with an interpreter. As Detective Lugo read Defendant his *Miranda* rights in English, the interpreter translated his recitation into Spanish.

Detective Lugo asked Defendant if he would continue speaking to them without an attorney present. Detective Lugo explained to Defendant he could request an attorney at any time, but Defendant would have to tell him if he wanted to speak to an attorney. Defendant continued to participate in the questioning without requesting an attorney. After having been informed of his *Miranda* rights, Defendant explained the extent of his sexual abuse of his minor step-daughter in further detail.

At this point, Detective Lugo asked Defendant to write an apology letter to the victim. Detective Lugo neither promised anything in return nor threatened Defendant if Defendant chose not to write the confession. Defendant spent approximately forty-five minutes writing the letter.

Defendant's former wife had provided the deputies with possession of Defendant's silver cellular phone. Deputies seized Defendant's black cellular phone,

which was in his possession during questioning. Detective Blevins received a search warrant for the contents of both cellular phones. Three videos were found on Defendant's silver cellular phone, dated 24 July 2017, showing an adult male sexually penetrating a female child. Two additional videos were uncovered on Defendant's black cellular phone, dated 24 May 2018 and 26 May 2018, also depicting an adult male sexually penetrating a female child.

Defendant was indicted for: (1) three counts of statutory rape of a child by an adult; (2), one count of statutory sexual offense with a child by an adult; (3) four counts of taking an indecent liberty with a child; (4) five counts of first-degree sexual exploitation of a minor; and, (5) five counts of third-degree sexual exploitation of a minor.

On 30 August 2021, Defendant filed a motion to suppress the oral and written statements he had made to law enforcement officers on 29 May 2018, along with all evidence viewed or seized from Defendant's two cellular phones. Senior Resident Judge Gorham held an evidentiary hearing on 15 December 2021 and later denied Defendant's motions to suppress on 27 January 2022. Defendant filed a motion *in limine* on 24 October 2022, renewing his motion to suppress evidence and further claiming law enforcement officers had illegally detained him. Judge Jason C. Disbrow denied Defendant's motions.

The jury found Defendant guilty of all charges. Defendant was sentenced as a prior record level I offender to four consecutive sentences of 300 to 420 months active

terms and three consecutive sentences of 73-148 months of active terms.  Defendant entered oral notice of appeal in open court.

## II.    Jurisdiction

Jurisdiction lies with this court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2023).  "A defendant who has a entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered."  N.C. Gen. Stat. § 15A-1444(a).

## III.    Issues

Defendant contends the trial court erred in denying his motion to suppress the oral and written statements he had made to the New Hanover County Sheriff's Deputies, as well as the evidence seized from his newer, black cellular phone because: (1) his statements were not made voluntarily; (2) he was in custody throughout the entire duration of his discussions with New Hanover County Sheriff's Deputies; (3) he had incriminated himself prior to receiving *Miranda* warnings; (4) his cellular phones were unconstitutionally searched and seized; and, (5) the trial court's admission of evidence retrieved from these devices constituted prejudicial error.

## IV.    Motion to Suppress

Defendant argues the trial court erred by denying his motion to suppress his statements obtained by New Hanover County Sheriff's Deputies because his statements were involuntary.

### A. Standard of Review

In reviewing a motion to suppress, this Court considers "whether the trial court's findings of fact are supported by competent evidence. If competent evidence exists, the findings of fact are binding on appeal." *State v. McKinney*, 153 N.C. App. 369, 372, 570 S.E.2d 238, 242 (2002) (citation omitted). This Court assesses "whether those findings of fact support the trial court's conclusions of law." *Id.* "Any conclusions of law reached by the trial court in determining whether defendant was in custody must be legally correct, reflecting a correct application of applicable legal principles to the facts found." *State v. Barden*, 356 N.C. 316, 332, 572 S.E.2d 108, 121 (2002) (citation and quotations omitted).

### B. Voluntariness

"A confession is admissible if it was given voluntarily and understandingly." *McKinney*, 153 N.C. App. at 373, 570 S.E.2d at 242 (citation and quotations omitted). To determine if a confession is voluntary, this Court evaluates the totality of the circumstances to decide whether the confession was a "product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 36 L.Ed.2d 854, 862 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 6 L.Ed.2d 1037, 1057-58 (1961)).

If "[the defendant's] will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." *Id.* The Supreme Court of the United States advanced factors to assess the voluntariness of a confession: (1) age of the accused; (2) the accused's "lack of education[;]" (3) "the

length of detention[;]" (4) the "prolonged nature of the questioning[;]" and, (5) the threat or "use of physical punishment such as the deprivation of food or sleep[.]" *Id.* at 226, 36 L.Ed.2d at 862.

Our Supreme Court provided additional factors in evaluating voluntariness: (1) whether defendant was in custody; (2) whether his *Miranda* rights were honored; (3) whether he was deceived; (4) whether he was held incommunicado; (5) the length of the interrogation; (6) whether there were physical threats or shows of violence; (7) the declarant's familiarity with the criminal justice system; (8) the mental condition of the declarant; and, (9) whether promises were made to obtain the confession. *State v. Jackson*, 308 N.C. 549, 582, 304 S.E.2d 134, 152-53 (1983).

### 1. *Finding of Fact Number 16*

Defendant challenges a portion of Finding of Fact Number 16: "Detective Lugo asked Defendant if he understood what voluntary meant and Defendant responded that he did and that it meant if he wanted to leave, he could go." Defendant argues this summary mischaracterizes Defendant's responses to the deputies and is not supported by competent evidence.

Finding of Fact 16 summarizes the multiple exchanges that had occurred between the deputies and Defendant during which Defendant purportedly had confirmed an understanding of how he had voluntarily arrived at the Sheriff's Office and that he was free to leave. Both the interview video, along with Detectives Lugo's and Blevin's testimonies regarding this specific exchange, sufficiently support this

finding.

Defendant alternatively claims Finding of Fact 16 is a conclusion of law and is subject to *de novo* review. Defendant correctly states this Court reviews legal conclusions *de novo* "regardless of the label applied by the trial court." *State v. Jackson*, 220 N.C. App. 1, 8, 727 S.E.2d 322, 329 (2012) (citation omitted).

Finding of Fact 16 is more accurately characterized by our Supreme Court's definition, which holds "a finding of fact [is] a determination made by a judge, jury, or administrative agency of a fact supported by the evidence in the record, usually presented at the trial or hearing." *State v. Bryant*, 361 N.C. 100, 103 n.2, 637 S.E.2d 532, 535 n.2 (2006) (quoting *Black's Law Dictionary* 664 (8th ed. 2004)). Finding of Fact 16 is not a conclusion of law, but a finding of fact that is supported by substantial evidence.

### 2. *Finding of Fact Number 21*

Defendant challenges Finding of Fact 21, claiming the statement "[Lieutenant Swan] did not act in a way that rises to coercive pressures" is a conclusion of law rather than a finding of fact. We agree.

"Facts are the basis for conclusions, and to call a 'conclusion' a 'finding of fact' does not make it one." *Peoples v. Peoples*, 10 N.C. App. 402, 408, 179 S.E.2d 138, 142 (1971) (citation omitted). Although Finding of Fact 21 is more accurately characterized as a conclusion of law, the conclusion was sufficiently supported by findings of fact and is ultimately a correct statement of law. *See id.*; *State v.*

*Buchanan*, 353 N.C. 332, 337, 543 S.E.2d 823, 827 (2001) (explaining "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it").

In *State v. Johnson*, our Supreme Court held the defendant had voluntarily confessed prior to *Miranda* warnings. 371 N.C. 870, 879, 821 S.E.2d 822, 829 (2018). The defendant in *Johnson* was not restrained or handcuffed, had retained his cellular phone, and was interviewed by officers in plain clothes. *Id.* Here, Defendant was treated similarly, as he was offered food and water, was left alone in the unlocked room with his cellular phone, and was interviewed by officers in plain clothes.

In *Johnson*, law enforcement officers did not make physical threats, but raised their voices at various points during the pre-*Miranda,* five-hour portion of the interview. *Id.* Here, Lieutenant Swan was present in the interview room for approximately fifteen minutes and raised his voice, imploring him to apologize to the victim, while questioning Defendant. From his voluntary arrival until his arrest, twenty-nine-year-old Defendant was voluntarily interviewed at the Sheriff's Office for approximately one and a half hours. Defendant was offered food and drink, was not denied access to the restroom, and stated he understood he was free to leave.

In *Johnson*, the defendant was "told, contradictorily and repeatedly, that officers both could not promise him anything and that the district attorney would 'work with him' and would 'go easier on him' if he cooperated and gave them truthful information." *Id.* at 879-80, 821 S.E.2d at 830. Here, Defendant offers no evidence of promises made in exchange for his voluntary statements. *See id.*

### 3. *Apology Letter*

The deputies' suggestions and requests for Defendant to confess in the form of a written apology letter to the victim to aid in her healing process, if leniency or forgiveness therefrom is promised or insinuated, may constitute illegal or coercive promises. Defendant's "apology letter" was written *after* the administration of *Miranda* warnings, which Defendant read in Spanish, and which were read to him by a certified Spanish language translator.

*Miranda* warnings are not required during non-custodial interrogations and need only be administered "where there has been such a restriction on a person's freedom as to render him in custody." *State v. Portillo*, 247 N.C. App. 834, 841, 787 S.E.2d 822, 828 (2016) (citation and quotations omitted).

To decide whether and when *Miranda* warnings should have been administered, "a court must initially determine whether a defendant was in custody at the time of questioning." *Id.* (citation and internal quotation marks omitted). Such determination is "based on the totality of the circumstances and is necessarily dependent upon the unique facts surrounding each incriminating statement." *Id.* at 842, 787 S.E.2d at 828 (citation and quotations omitted). The court "must examine whether a reasonable person in defendant's position, under the totality of [the] circumstances, would have believed that he was under arrest or was restrained in his movement to the degree associated with a formal arrest." *Barden*, 356 N.C. at 337, 572 S.E.2d at 123 (citation and quotations omitted).

In *State v. Barden*, the defendant "voluntarily drove his own car to meet with police for questioning, [and] was repeatedly informed both before he agreed to talk with the investigators and after he arrived for questioning that he was not under arrest and was free to leave at any time." *Id.* at 337, 572 S.E.2d at 123-24. Our Supreme Court held the defendant was not subject to a custodial interrogation. *Id.* at 338-39, 572 S.E.2d at 124.

Here, and in addition to those facts, deputies offered Defendant food and water, left Defendant alone in the unlocked room with his cellular phone, interviewed Defendant in plain clothes, and Defendant's voluntary interview was less than two hours. Defendant had been convicted of second-degree assault less than a year earlier, and he had prior exposure to law enforcement officers and to the criminal justice system. Defendant's former wife testified no significant language barriers existed between them over the course of their three-year marriage.

Based upon the totality of the circumstances, Defendant has failed to show reversible error in the trial courts' rulings, orders, and judgments regarding denial of Defendant's motions to suppress oral and written statements made on 29 May 2018. The trial court properly concluded Defendant was not in custody when he first voluntarily admitted he had inappropriately touched the victim.

His subsequent oral and written statements providing further details regarding Defendant's actions were made *after* the proper administration of *Miranda* warnings and without a request for counsel. Because this Court holds Defendant was

not in custody prior to the administration of *Miranda* warnings, it is unnecessary to address the second and third issues of whether Defendant incriminated himself prior to receiving *Miranda* warnings.  *Id.*

## C.  Cellular Phone Seizure

### 1.  *Riley v. California*

Defendant argues the trial court erred by denying his motion to suppress evidence obtained from his cellular phones because the cellular phones were unconstitutionally searched and seized.

Generally, "[a] governmental search and seizure of property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement."  *Id.* at 340, 572 S.E.2d at 125 (alteration in original) (citation and quotations omitted). Exceptions exist to searching and seizing cellular phones.  *Riley v. California*, 573 U.S. 373, 401-02, 189 L.Ed.2d 430, 451 (2014).

This Court "recognizes consent searches as an exception to the general warrant requirement."  *State v. Hagin*, 203 N.C. App. 561, 564, 691 S.E.2d 429, 432 (2010) (citation omitted).  In *State v. Kellam*, this Court held "permission may 'be obtained from a third party who possessed common authority or other sufficient relationship to the premises or *effects* sought to be inspected.' "  *State v. Kellam*, 48 N.C. App. 391, 397, 269 S.E.2d 197, 200 (1980) (emphasis supplied) (quoting *United States v. Matlock*, 415 U.S. 164, 171, 39 L.Ed.2d 242, 250 (1974)).

Defendant's former wife delivered the silver cellular phone and granted permission for deputies to search its contents. "[N.C. Gen. Stat. §15A-222 (2023)] places no express restriction on the authority of a wife to consent to a search of the premises she shares with her husband." *State v. Worsley*, 336 N.C. 268, 283, 443 S.E.2d 68, 75 (1994). Defendant purportedly had purposely left the older, silver cellular phone in the possession of his minor two-year-old son, so he could watch videos on YouTube Kids. Defendant's son purportedly brought the cellular phone to his mother, i.e., Defendant's wife, because the cellular phone had stopped working, whereupon she discovered the incriminating videos.

Defendant's wife was "clearly a person who by ownership or otherwise is reasonably apparently entitled to give or withhold consent to a search of [the] premises she shares with her husband." *Id.* at 283, 443 S.E.2d at 76 (alteration in original). Later, Detective Blevins sought and received a search warrant to search the contents of the silver cellular phone and retrieved incriminating videos created on 24 July 2017, purportedly showing an adult male sexually abusing a female child. The video images recovered from the silver cellular phone left in his wife's and minor son's possession were relevant and admissible.

### 2. *Prevent the Imminent Destruction of Evidence*

Another exception to the prohibited warrantless seizure of a cellular phone includes "when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonably under the Fourth

Amendment." *Riley*, 573 U.S. at 401-02, 189 L.Ed.2d at 451 (citation and quotations omitted) (alteration in original). The prevention of the imminent destruction of evidence is one of the primary incidents of exigent circumstances justifying a warrantless seizure. *Id.* at 402, 189 L.Ed.2d at 451.

To determine whether exigent circumstances justify a warrantless seizure, this Court evaluates objective standards of conduct and looks "at the whole record to determine if there were factors reasonably supporting the immediate seizure . . . ." *State v. Grice*, 367 N.C. 753, 763, 767 S.E.2d 312, 320 (2015).

During the interview, Defendant had voluntarily permitted Detective Lugo to scroll through Defendant's photographs and videos while Defendant maintained his grip on the cellular phone. While Lugo was scrolling with Defendant's permission, Defendant pulled his cellular phone away. Detective Lugo testified this action occurred when he attempted to view Defendant's deleted files.

At this point, Detective Lugo warned Defendant not to remove files and images and placed the black cellular phone out of Defendant's reach. Detective Lugo testified this action was to prevent Defendant from permanently deleting the files. Whether evidence could be destroyed with relative ease has been noted by our Supreme Court as ample justification for warrantless seizure under the exigent circumstances exception. *Id.* at 764, 767 S.E.2d at 321 ("[T]he individual could easily have moved or destroyed the plants if they were left on the property.").

This warrantless seizure falls squarely in the exigent circumstances exception.

Detective Blevins later received a search warrant to search the contents of the black cellular phone and retrieved incriminating videos created on 24 May 2018 and 26 May 2018 purportedly showing an adult male sexually abusing a female child. Defendant's arguments are overruled.

## V.    Conclusion

The trial courts' orders and judgments denying Defendant's motions to suppress evidence retrieved from both of his cellular phones are affirmed. Defendant's constitutional rights were not violated, as the searches and seizures fell within well-defined exceptions to the requirement for a warrant and the search of his black cellular phone was conducted after a search warrant was obtained.

Defendant received a fair trial, free from prejudicial errors he preserved and argued on appeal.  Defendant failed to show prejudicial or reversible error: in the obtainment or the admission of the evidence, in the jury's verdicts, or in the judgments entered thereon.  *It is so ordered.*

NO ERROR.

Judges ZACHARY and GRIFFIN concur.